**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CECIL GARDNER,**

       **Petitioner,**

**v.**                             **Case No. 4:13cv577-RH/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,[1]**

       **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On October 18, 2013, Petitioner Cecil Gardner, proceeding pro se,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

ECF No. 1.  On August 25, 2014, Respondent filed an answer, with

exhibits.  ECF No. 14.  Petitioner did not file a reply, although given the

opportunity to do so.  *See* ECF No. 13.

This matter was referred to the undersigned United States Magistrate

Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

---

[1] The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.  Julie Jones because Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

Northern District of Florida Local Rule 72.2(B).  The pleadings and

attachments before the Court show that Petitioner is not entitled to federal

habeas relief, and this § 2254 petition should be denied.

## Procedural Background

On May 12, 2008, in connection with events that occurred April 27,

2008, the State of Florida charged Petitioner Cecil Gardner with one count

of burglary of a dwelling with a person assaulted, a first degree felony, in

violation of section 810.02(2)(a), Florida Statutes, and one count of

domestic battery by strangulation, a third degree felony, in violation of

section 784.041(2), Florida Statutes.  Ex. A.[2]  The victim and Petitioner

were married but separated at the time of the crime.  Ex. C at 121.  A jury

found Petitioner guilty on both counts on February 20, 2009.  *Id.* at 279-80.

On February 26, 2009, Petitioner filed a motion for new trial, asserting

that the trial court erred in denying Petitioner's motion for judgment of

acquittal.  Ex. E.  On March 23, 2009, Petitioner filed an amendment to his

motion for new trial, asserting that new and material evidence in the form of

a utility bill was found that would "probably have changed the verdict."  Ex.

---

[2] Hereinafter, all citations to the state court record, "Ex. -," refer to exhibits
submitted with Respondent's answer, ECF No. 14.

F.  After a hearing held on March 25, 2009, the court denied Petitioner's amended motion for new trial.  Ex. G at 28.

On March 30, 2009, the court sentenced Petitioner to fifteen years in prison on count one and five years in prison on count two, running concurrently.  Ex. H at 49.  The court granted Petitioner 318 days jail credit. *Id.*

On April 29, 2010, the First District Court of Appeal (DCA) affirmed Petitioner's judgment and sentence per curiam without a written opinion. Ex. P; Gardner v. State, 34 So.3d 5 (Fla. 1st DCA 2010) (table).  The mandate issued on May 25, 1010.  Ex. Q.

On May 25, 2011, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state trial court, alleging ineffective assistance of counsel.  Ex. R.  An evidentiary hearing took place on September 14, 2012.  Ex. S.  On November 14, 2012, the state court issued an order denying Petitioner's Rule 3.850 motion.  Ex. T at 83.  Petitioner appealed this denial to the First DCA on April 29, 2013. Ex. U.  The State filed an answer brief on May 21, 2013, Ex. V, and Petitioner filed a reply brief on June 9, 2013, Ex. W.

On August 12, 2013, the First DCA affirmed the denial of Petitioner's Rule 3.850 motion per curiam without a written opinion.  Ex. X; Gardner v.

State, 118 So.3d 223 (Fla. 1st DCA 2013) (table).  The mandate issued on August 28, 2013.  Ex. Y.

As indicated above, Petitioner filed this § 2254 petition on October 18, 2013.  ECF No. 1.  Petitioner asserts a claim of ineffective assistance of counsel, specifically that defense counsel "fail[ed] to investigate and present available exculpatory evidence."  *Id.* at 6.  Respondent has filed an answer, with exhibits.  ECF No. 14.  Petitioner did not file a reply, although given the opportunity to do so.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S.

170, 181 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011),

and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is

limited to the record that was before the state court that adjudicated the

claim on the merits."  Cullen, 563 U.S. at 181.

For claims of ineffective assistance of counsel (IAC), the U.S.

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced
> the defense.  This requires showing that counsel's errors were
> so serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness."  Id. at 688.  To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Id. at 694.  "A reasonable

probability is a probability sufficient to undermine confidence in the

outcome."  *Id.*  For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

Petitioner asserts that his trial counsel provided ineffective assistance by "failing to investigate and present available exculpatory evidence."  ECF No. 1 at 6.  Specifically, he asserts that, at trial, defense counsel did not produce a utility bill in the Petitioner's name that would have "substantiated defense counsel's unsupported claims . . . that Petitioner was an invitee or licensee in the Coyote Creek residence."  *Id.*

The discovery of this utility bill was the reason for Petitioner's trial counsel filing a motion for new trial.  *See* Ex. F.  At the hearing for this motion, the state court made the following findings on the record, in pertinent part:

The bills change absolutely nothing for me, the Court, given the facts that were presented in the case.  Mr. Gardner's wife testified that she resided in the home, they resided in the home together, that he had moved out, they were separated, he didn't live there.  The only people that had keys to the house were her, her sister-in-law and someone else, that they were living there. There was no dispute about who lived in the house. . . .

. . .

. . . And I don't believe that a utility bill – well, the fact that some of the bills may still have been in Mr. Gardner's name establishes a possessory interest in this home, such that would give any reasonable possibility the jury would find that he had a right to be there, simply because the bill remained in his name.  The bill remains in his name today. . . .

. . .

What it means is exactly what I think what happens every day. People move in, the bills – half the bills in my house are in my wife's name, half of them are in her name.  If I left and moved to Tahiti tomorrow and abandon my wife, that doesn't give me the right ten years later to come back into the house.  Just because she didn't change the name on the utility bills doesn't mean it does.

Ex. G at 26-27.  For these reasons, the state court denied Petitioner's motion for new trial.[3]  *Id.* at 29.

In his Rule 3.850 motion, Petitioner asserted a similar claim, arguing that the utility bills would have contradicted witness testimony stating that

---

[3] This reasoning is consistent with current Florida case law.  *See* <u>Washington v. State</u>, 11 So.3d 980 (Fla. 5th DCA 2009) (finding that a defendant charged with burglary was not entitled to judgment of acquittal despite his name being on the utility bill and the lease).

Petitioner had "never lived at the residence and . . . was, at best, an occasional visitor." Ex. R at 11 (internal quotation marks omitted). In denying the claim, after an evidentiary hearing, the state post-conviction court made the following findings:

> Mr. David Collins or Chuck Collins were not ineffective at trial herein. The discovery of the utility bills would have substantially altered the outcome of the trial, as there are many instances where one party sets up a utility account in their name, and is subsequently removed from the residence. The remaining occupant simply does not change the name on the utility bill. Testimony of several witnesses clearly established that the Defendant was not living in the residence at the time the crime was committed, nor was he an invitee or licensee. The mere fact that the utility bill was still in his name does not give him the right to enter the premises.

Ex. T at 83. This ruling, affirmed on appeal without opinion, is entitled to deference and review is limited to the record before the state court. *See* Cullen, 563 U.S. at 181.

The record supports the state post-conviction court's finding that Petitioner was not living at the residence and that he was not an invitee or licensee. At trial, the victim's son and daughter were each asked if Petitioner had been living with them at the time of the offense, and they both answered, "[n]o." Ex. C at 71, 93. The victim also testified at trial, "[h]e did not live with me." *Id.* at 129. The victim further testified that she did not invite Petitioner into her house and that, during a phone call with Petitioner

the evening of the incident, she "instructed him to stop calling, go home." *Id.* at 123; *see id.* at 122, 128.  On cross examination, the victim testified Petitioner had never lived with her at this residence.  *Id.* at 129.

The record also supports the state post-conviction court's finding that a utility bill in someone's name does not give that person the right to enter the premises.  At the evidentiary hearing, the victim testified that she "put the light bill in his name at the time he was incarcerated," and that there was no agreement that Petitioner would live at the house after his release. Ex. S at 18-19.  She also testified that Petitioner was incarcerated in March of 2007, when she first moved to the residence and the utilities were put in his name (because she could not pay an outstanding utility bill), and that Petitioner was incarcerated in May of 2010, when the utilities were switched to the victim's name (after she paid the outstanding bill).  *See id.* at 17-18, 27.  She testified that Petitioner's name was not on the lease.  *Id.* at 12.  She testified that Petitioner never lived at that residence and never paid the utility bills there.  *Id.* at 18-20.

Petitioner's trial counsel, at the evidentiary hearing, testified that he learned of the utility bill issue during trial.  *Id.* at 40-41.  Counsel testified that not discussing the utility bill was essentially a strategic decision.  *See id.* at 41 (stating that his opening statement was based on "credibility,

insufficiency of the evidence . . . [a]nd then all of a sudden I'm learning he's either paying for the utilities or he's on the utility bill.  And I'm like, well, I'd like to have the bill before I do anything further"); *see also id.* at 44-45 ("I think when you're trying a case with a jury you need to stick to your theory that you've given in opening."); 50, 55 (noting potential concerns that introducing the utility bill could have led to the jury finding out that Petitioner was incarcerated at the time the account was opened).  This testimony supports the state post-conviction court's finding that trial counsel was not ineffective.  *See* <u>Strickland</u>, 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.") (internal quotation marks omitted).

At the evidentiary hearing for Petitioner's Rule 3.850 motion, there was a discussion about the differing standards used for IAC claims and newly discovered evidence claims.  *See* Ex. S at 63-64.  For IAC claims, "[t]he defendant must show that there is a reasonable probability that . . . the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694.  For newly discovered evidence claims, "in order to provide relief, the newly discovered evidence must be of

such nature that it would *probably* produce an acquittal on retrial." Jones v.

State, 591 So.2d 911, 915 (Fla. 1991) (emphasis in original).  The court in

Strickland specifically mentioned that "the newly discovered evidence

standard is not an apt source from which to draw a prejudice standard for

ineffectiveness claims." Strickland, 466 U.S. at 694.  Based on this,

Petitioner's post-conviction counsel argued at the evidentiary hearing that

Petitioner was only required to show that confidence in the outcome had

been undermined.  *See* Ex. S at 71.  While this is true, the court in

Strickland also noted that "not every error that conceivably could have

influenced the outcome undermines the reliability of the result of the

proceeding." Strickland, 466 U.S. at 694.  The court further stated that

"[w]hen a defendant challenges a conviction, the question is whether there

is a reasonable probability that, absent the errors, the factfinder would have

had a reasonable doubt respecting guilt," and that "[a]n error by counsel . . .

does not warrant setting aside the judgment of a criminal proceeding if the

error had no effect on the judgment." *Id.* at 691, 695.  Therefore, although

the state post-conviction court did not use exact language from Strickland

in denying Petitioner's motion, it properly applied Strickland in determining

that the utility bill in Petitioner's name "would not have substantially altered

the outcome of the trial." Ex. T at 83. This determination was reasonable based on the record.

Petitioner has not shown that the state court's adjudication involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to federal habeas relief. The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is respectfully **RECOMMENDED** that the § 2254 petition (ECF No. 1) be **DENIED**. The Clerk shall substitute Julie L. Jones for Michael D. Crews as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on May 31, 2016.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**